IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ILLSON MOLLA, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 11-6470 (JBS/KMW) |
| ADAMAR OF NEW JERSEY, INC., et al., | **OPINION** |
| Defendant. | |

APPEARANCES:

Scott P. Sigman, Esq.
Law Offices of A. Charles Peruto, Jr.
2101 Pine Street
Philadelphia, PA 19103
        Attorney for Plaintiffs Illson Molla and Mimoza Molla

Domenic B. Sanginiti, Esq.
Cooper Levenson
1125 Atlantic Ave.
Third Floor
Atlantic City, NJ 08401
        Attorney for Defendants Adamar of New Jersey, Inc., and
        Adamar of NJ in Liquidation, LLC

Domenic B. Sanginiti, Esq.
Russell L. Lichtenstein, Esq.
Cooper Levenson
1125 Atlantic Ave.
Third Floor
Atlantic City, NJ 08401
        Attorneys for Defendants Tropicana Entertainment Holdings,
        LLC; Tropicana Entertainment; and Tropicana Entertainment,
        Inc.

David W. Sufrin, Esq.
Zucker, Steinberg, Sonstein, & Wixted, PA
415 Federal Street
Camden, NJ 08103
    Attorney for Defendant and Third-Party Plaintiff Dave
    Willard

Darren T. Hibbs, Esq.
Law Office of Debra Hart
303 Fellowship Road
Suite 300
Mount Laurel, NJ 08054
    Attorney for Third-Party Defendant Plymouth Rock Management
    Company of New Jersey

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court on the motion to dismiss
filed by Defendant Tropicana Atlantic City Corp. d/b/a Tropicana
Casino and Resort ("Tropicana Corp.")[1] [Docket Item 32] and the
unopposed motion for summary judgment filed by Third-Party
Defendant High Point Preferred Insurance Company (improperly
pled as Plymouth Rock Management Company of New Jersey) ("High
Point")[2] [Docket Item 42].

---

[1] The docket lists Tropicana Entertainment Holdings, LLC;
Tropicana Entertainment; and Tropicana Entertainment, Inc. as
Defendants, not Tropicana Atlantic City Corp. d/b/a Tropicana
Casino and Resort. Counsel for Tropicana Atlantic City Corp.
d/b/a Tropicana Casino and Resort entered an appearance on
behalf of the three Tropicana entities listed on the docket.
[Docket Item 5.] The Court infers that Tropicana Atlantic City
Corp. d/b/a Tropicana Casino and Resort is equivalent to
Tropicana Entertainment Holdings LLC, Tropicana Entertainment,
and Tropicana Entertainment, Inc.

[2] The docket identifies Plymouth Rock Management Company of New
Jersey not High Point Preferred Insurance Company, but High

Plaintiff Illson Molla alleges that he was assaulted by security guards, including Defendant Dave Willard, while visiting Tropicana casino on November 5, 2009. He asserts tort claims and his wife, Plaintiff Mimoza Molla, asserts loss of consortium claims. Defendant Adamar of New Jersey, Inc., ("Adamar") owned Tropicana hotel and casino at the time that Molla visited. Adamar had filed for bankruptcy on April 29, 2009, before the alleged assault. Tropicana Corp. purchased the hotel and casino on March 8, 2010, after the alleged assault. Tropicana Corp.'s motion to dismiss will be granted because Tropicana Corp. purchased the hotel and casino after the assault, and the purchase was free and clear of all claims, interests, and encumbrances.

Defendant Dave Willard filed a Third-Party Complaint against High Point alleging that High Point must represent him in this lawsuit and indemnify him pursuant to his homeowner's insurance policy. High Point seeks summary judgment arguing that Willard's homeowner's insurance policy excluded liability for business or workplace conduct. The Court will grant Plymouth Rock's motion because Willard's altercation with Mr. Molla occurred during Willard's employment as a casino security guard,

---

Point's counsel filed a designation of trial counsel [Docket Item 48] indicating that High Point had been improperly pled as Plymouth Rock.

3

and the business exclusion in the insurance policy was clear, specific, and prominent.

## II.  BACKGROUND

On November 5, 2009, Plaintiffs visited Tropicana Casino and Entertainment Resort. (Am. Compl. ¶ 17.) Mr. Molla alleges that casino employees, including Defendant Dave Willard, grabbed him from behind, threw him to the ground, struck him in the face, handcuffed him, and unlawfully detained him in a holding cell. (Am. Compl. ¶ 17.) Mr. Molla alleges that he suffered severe and permanent injuries. (Am. Compl. ¶ 18.)

Plaintiffs filed this action on November 4, 2011. They asserted diversity jurisdiction under 28 U.S.C. § 1332. Mr. Molla asserts tort claims, including assault, battery, and negligent hiring, training, and retention. (Id. ¶ 22.) Mrs. Molla asserts loss of consortium claims. (Id. ¶ 42.)

Defendant Willard filed a Third-Party Complaint [Docket Item 10] against Third-Party Defendant High Point seeking declaratory judgment that High Point must indemnify Willard pursuant to his homeowner's insurance policy and asserting claims for breach of contract, breach of fiduciary duty, and breach of the obligation of good faith and fair dealing.

4

## III. MOTION TO DISMISS

### A. Factual Bankground: Adamar's Bankruptcy Proceedings

Adamar of New Jersey, Inc., ("Adamar") f/k/a Tropicana Casino and Resort filed for Chapter 11 bankruptcy on April 29, 2009.

The Bankruptcy Court issued an order on November 4, 2009 approving the sale of the debtors' assets "free and clear of all Encumbrances, claims and interests" pursuant to 11 U.S.C. § 363(f). (Def. Mot. Dismiss Ex. B at 24 ¶ Q.) The November 4, 2009 order noted that "[a]s a condition to the purchase . . ., [purchasers] . . . require that the Debtors' Acquired Assets and the Reorganized Tropicana Stock be sold free and clear of all Encumbrances, claims and interests, except those explicitly and expressly assumed . . . ." (Def. Mot. Dismiss Ex. B at 10 ¶ X.) The November 4, 2009 order further specified:

> [e]xcept as expressly permitted or otherwise specifically provided . . ., all persons or entities holding Encumbrances, claims or interests of any kind or nature whatsoever against the Debtors, the Conservator, the Debtors' Acquired Assets, or the Reorganized Tropicana Stock (whether legal or equitable, secured or unsecured, prepetition or postpetition, matured or unmatured, fixed or contingent, liquidated or unliquidated, known or unknown, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors' Acquired Assets, the Reorganized Tropicana Stock, the operation of the Business prior to the Closing Date, or the Transactions, hereby are forever barred, estopped, and permanently enjoined from asserting such party's Encumbrances, claims or interests against the Specified Parties, the Secured

5

Parties, their successors or assigns, and their property or assets . . . .

(Def. Mot. Dismiss Ex. B at 26-27 ¶ S.)

The sale to Tropicana Atlantic City Corp. d/b/a Tropicana Casino and Resort ("Tropicana Corp.") closed on March 8, 2010. (Def. Mot. Dismiss Ex. A ¶ 3.)

The bankruptcy court issued an order on August 5, 2011 dismissing the debtors' chapter 11 cases. (Def. Mot. Dismiss Ex. C at 1.) The bankruptcy court's August 5, 2011 order authorized debtors to dissolve Adamar of NJ in Liquidation LLC. (Id. at 3 ¶ 4.) The bankruptcy court further noted that "[t]here are no assets remaining in the Debtors' estates from which to pay priority unsecured claims . . ." and "[t]here are no assets remaining in the Debtors' estates from which to pay general unsecured claims . . . ." (Id. at 4 ¶¶ 5-6.)

The bankruptcy case was closed on October 12, 2011.

**B. Briefing History and Parties' Arguments**

Tropicana Corp. argues that dismissal is appropriate because Adamar's bankruptcy was a liquidation bankruptcy whereby all assets were sold to raise funds for outstanding creditors; no assets remain to satisfy the action; Tropicana purchased the assets free and clear of all claims, interests, and encumbrances; and the bankruptcy court barred future claims

against Tropicana Corp. Absent dismissal, Tropicana Corp. asks the Court to refer this matter to the bankruptcy court.

Plaintiffs filed opposition [Docket Item 35] arguing that "after the Bankruptcy Order, it was business as usual at the Tropicana Resort & Casino. Plaintiff, a business invitee, . . . visited the Tropicana and was not made aware of the pending Bankruptcy Order." (Pl. Opp'n at 1.) Plaintiffs emphasized that their Complaint was timely filed in this Court, their claims arose after the bankruptcy was filed, and they never received adequate due process notice of the bankruptcy proceedings.

Plaintiffs also argue that dismissal is not ripe because discovery is necessary to determine what Tropicana Corp. did to comply with the bankruptcy court's November 4, 2009 order; who was in charge of casino operations on November 5, 2009; which policies and personnel Adamar employed on November 5, 2009; which documents comprise the sale of the casino; what notices were given to business invitees of the pending bankruptcy; and what investigations were conducted regarding liabilities. Plaintiffs also argue that Tropicana Corp.'s motion should be denied on equitable grounds because it failed to raise the bankruptcy argument until two years after this litigation commenced.

Tropicana Corp. submitted a reply [Docket Item 36] arguing, inter alia, that Plaintiffs did not cite any legal authority

supporting the argument that Tropicana Corp.'s motion should be denied on equitable grounds based on Tropicana Corp.'s delay.

Plaintiffs submitted an unauthorized surreply [Docket Item 37] emphasizing that they were entitled to due process notice of the bankruptcy; Tropicana Corp. should have conducted due diligence to learn of pending claims before purchasing the hotel and casino; and they are entitled to discovery regarding Tropicana Corp.'s knowledge of pending claims.

Defendant filed a letter [Docket Item 41] notifying the Court of <u>Dinielli v. Tropicana Hotel and Casino</u>, No. A-2869-12T4, which the Superior Court of New Jersey, Appellate Division decided after briefing on this motion to dismiss was complete and which addresses similar issues. Plaintiff requested [Docket Item 50] permission to file a second surreply in response to <u>Dinielli</u> and the Court denied [Docket Item 51] the request.

**C. Standard of Review**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." Id. (citation
omitted).

**D. Analysis**

The Court will grant Tropicana Corp.'s motion because
Tropicana Corp. purchased the hotel and casino free and clear of
any interests or claims, including Plaintiffs' tort claims.

A bankruptcy trustee may sell property "free and clear of
any interest in such property . . . ." 11 U.S.C. § 363(f). The
bankruptcy court mandated that Tropicana Corp.'s purchase of
Adamar's assets was free and clear of all claims and interests
pursuant to § 363(f) and that being "free and clear of all
Encumbrances, claims and interests" was a condition of the sale.
(Def. Mot. Dismiss Ex. B at 10 ¶ X.) The purchase was free of
all claims or interests "whether legal or equitable, secured or
unsecured, prepetition or postpetition, matured or unmatured,
fixed or contingent, liquidated or unliquidated, known or
unknown, senior or subordinated . . . ." (Def. Mot. Dismiss Ex.
B at 26-27 ¶ S.) These terms encompass Plaintiffs' claims, which
arose after Adamar filed for bankruptcy and before Tropicana
Corp. purchased the hotel and casino.

In In re Trans World Airlines, Inc. ("TWA"), 322 F.3d 283
(3d Cir. 2003), the Third Circuit examined whether a sale under
§ 363(f) precluded the purchaser's liability for discrimination
claims stemming from the debtors' conduct before the sale. The

TWA court concluded that "[b]ecause section 363(f) of the
Bankruptcy Code permits a sale of property 'free and clear' of
an 'interest in such property[,]' and because the claims against
TWA here were connected to or arise from the assets sold, we
affirm the Bankruptcy Court's order approving the sale 'free and
clear' of successor liability." Id. at 285.

    The TWA court had two primary reasons for its decision:
First, it held that "the sale of TWA's assets . . . at a time
when TWA was in financial distress was likely facilitated by
[the purchaser] obtaining title to the assets free and clear of
these civil rights claims. Absent entry of the Bankruptcy
Court's order providing for a sale of TWA's assets free and
clear of the successor liability claims at issue, [the
purchaser] may have offered a discounted bid." Id. at 292-93;
see also Douglas v. Stamco, 363 F. App'x 100, 102-03 (2d Cir.
2010) (noting that § 363(f) "was a crucial inducement in the
sale's successful transaction" and emphasizing that "the
potential chilling effect of allowing a tort claim subsequent to
the sale would run counter to a core aim of the Bankruptcy Code,
which is to maximize the value of the assets and thereby
maximize potential recovery to the creditors").

    As a second justification for respecting the "free and
clear" language set forth in § 363(f), the TWA court explained
that "allowing the claimants to seek a recovery from the

successor entity while creditors which were accorded higher
priority by the Bankruptcy Code obtained their recovery from the
limited assets of the bankruptcy estate would subvert the
specific priorities which define Congressional policy for
bankruptcy distribution to creditors." TWA, 322 F.3d at 292
(citation omitted).

The Appellate Division of the New Jersey Superior Court
considered the exact question presented in this case in Dinielli
v. Tropicana Hotel & Casino, A-2869-12T4, 2014 WL 87671 (N.J.
Super. Ct. App. Div. Jan. 10, 2014), and upheld the dismissal of
the plaintiff's claims. Denise Dinielli suffered a slip-and-fall
at Tropicana Hotel and Casino on January 4, 2010, after Adamar
filed for bankruptcy and before the sale to Tropicana Corp.
closed. Dinielli sued Tropicana Corp. and claimed that "the
bankruptcy court's approval of the sale did not relieve
defendant of personal injury claims . . . ." Id. at *2. The
Dinielli court disagreed, cited TWA, and concluded that "the
bankruptcy court's order approving the sale of Adamar's assets
to defendant pursuant to 11 U.S.C.A. 363(f) relieved defendant
of any liability for plaintiff's personal injury claim." Id. at
*2. It specifically noted that Tropicana Corp. "did not
expressly or impliedly assume Adamar's liability for personal
injury claims; there is no actual or de facto consolidation or
merger of the companies; defendant is not a 'mere continuation'

11

of Adamar; and the purchase was not undertaken fraudulently to avoid liability." Id. at *3. This Court agrees with the Dinielli court's analysis.

The bankruptcy court's November 4, 2009 order, 11 U.S.C. § 363(f), and the TWA case are clear: Tropicana Corp.'s purchase of the hotel and casino was free and clear of all claims, interests, and encumbrances including those claims, such as Plaintiffs', which arose after Adamar filed for bankruptcy.

Plaintiff cites cases emphasizing the importance of notice to claimants before discharging their claims in bankruptcy proceedings. See, e.g., In re Grossman's Inc., 607 F.3d 114, 122 (3d Cir. 2010) ("If potential future tort claimants have not filed claims because they are unaware of their injuries, . . . [d]ischarge of such claims without providing adequate notice raises questions under the Fourteenth Amendment"); Jones v. Chemetron Corp., 212 F.3d 199, 209 (3d Cir. 2000) ("if a potential claimant lacks sufficient notice of a bankruptcy proceeding, due process considerations dictate that his or her claim cannot be discharged by a confirmation order").

The cases Plaintiffs cite are inapposite because the issue here is not whether Plaintiffs' claims were discharged in the bankruptcy proceeding; the issue is whether Tropicana Corp. can be held liable for Plaintiffs' claims against the debtor Adamar. The Court is not holding that Plaintiffs' claims were

discharged; the Court is holding that Plaintiffs may not seek relief from Tropicana Corp. because it bought the casino free and clear of all claims and interests arising prior to the sale.

Plaintiffs also argue that the motion to dismiss must be denied so that Plaintiffs can conduct further discovery. This argument lacks merit because discovery will not impact the clear mandates of the bankruptcy court and § 363(f).

Finally, Plaintiffs argue that the Court should deny the motion to dismiss for equitable reasons because Tropicana Corp. filed its motion two years after Plaintiffs filed their Complaint. Plaintiffs do not cite any case law in support of this argument. Plaintiffs' Complaint [Docket Item 1] was filed on November 4, 2011. On October 3, 2012, Magistrate Judge Karen M. Williams issued an order that the Tropicana Defendants must answer, move, or respond to the Amended Complaint by October 12, 2012. [Docket Item 9.] The motion to dismiss was filed almost one year after that deadline and almost two years after the Complaint was filed. Federal Rule of Civil Procedure 55 permits a plaintiff to seek default judgment against a defendant who fails to plead or otherwise defend. Plaintiffs had recourse to address Tropicana Corp.'s failure to plead or defend, yet they never sought default judgment. Tropicana Corp.'s delay is not a basis for denying the motion to dismiss.

Tropicana Corp. will be dismissed from this action.[3]

## IV.   MOTION FOR SUMMARY JUDGMENT

### A. Factual Background: Willard's Homeowner's Insurance and the Altercation

Willard had homeowner's insurance through High Point at the time of the casino incident involving Mr. Molla on November 5, 2009. (High Point Statement of Undisputed Facts ("SOF") ¶ 18.) Under the bold, italized heading "**_Exclusions_**," Willard's homeowner's insurance policy specifies that it "do[es] not cover **bodily injury** or **property damage**: . . . arising out of **business** pursuits of any **insured** including duties that are normally, periodically, or even seldom associated with the insured's profession, trade or occupation, or full or part-time activity

---

[3] It is unclear whether Tropicana Corp. sought to dismiss the entire action against all Defendants. Its notice of motion seeks an order "to dismiss this action against Defendant Tropicana Atlantic City Corp d/b/a Tropicana Casino and Resort . . . ." [Docket Item 32 at 2.] The docket entry for the motion to dismiss lists Adamar of New Jersey, Inc.; Adamar of NJ in Liquidation, LLC; and the three Tropicana entities. [Docket Entry 32.] Tropicana Corp.'s proposed order requests language ordering that "this matter is dismissed in its entirety." [Docket Item 32-3 at 2.] The Court will construe Tropicana Corp.'s motion as seeking dismissal only of the Tropicana entities. The notice of motion is the operative document in terms of providing notice to all parties, and it did not name either the individual Defendants or Adamar.  Furthermore, Tropicana Corp.'s argument that it purchased Adamar's assets free and clear does not apply to individual Defendants, such as Dave Willard, or to Adamar, which owned the property when the incident occurred. Because Adamar was not named in the notice of motion, the Court does not, at this time, address Tropicana Corp.'s argument that Adamar should be dismissed because all assets were liquidated and no funds remain.

conducted for economic gain . . . ." [Docket Item 42-15 at 29 (bold in original).]

On November 5, 2009, Willard was employed by Tropicana Casino as a security supervisor/dual rate manager. (Id. ¶ 2.) Willard was on the casino floor when he encountered Mr. Molla. (Willard Dep. 64:15-19.) Willard told Mr. Molla to leave the casino. (Willard Dep. 65:10-66:16.) Willard claimed that he told Mr. Molla to leave the casino because Mr. Molla had a history of disruptive behavior in casinos. [Docket Items 42-11 at 1 & 42-12 at 1.] Mr. Molla refused to leave, and a physical altercation ensued. (Willard Dep. 65:10-66:16.) Both Willard and Mr. Molla filed simple assault complaints against each other. [Docket Item 42-11 at 1-2.]

### B. Briefing History and Parties' Arguments

Third-Party Defendant High Point Preferred Insurance Company ("High Point") filed a motion for summary judgment [Docket Item 42] against Third-Party Plaintiff Dave Willard asserting that Willard's home insurance policy does not cover Willard's actions in the course of his employment and, therefore, that High Point cannot be required to indemnify Willard.

Willard did not oppose this motion.

Plaintiff asked the Court to extend the opposition deadline to allow Plaintiff to file opposition because Plaintiff had

15

discharged his original attorney and hired a new attorney. The Court extended the opposition deadline twice. [Docket Items 46 & 56.] Plaintiff filed opposition [Docket Item 59] on April 21, 2014, arguing that Willard's actions in handcuffing and punching Plaintiff exceeded the scope of his employment and Willard's use of force was unnecessary and unauthorized.

High Point did not respond to Plaintiff's opposition.

**C. Standard of Review**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The Court must "draw all reasonable inferences in favor of the non-movant." Kowalski v. L & F Products, 82 F.3d 1283, 1288 (3d Cir. 1996).

**D. Analysis**

High Point's motion for summary judgment will be granted.

16

The New Jersey Supreme Court has mandated that, "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997). "However, exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." Id. (citation omitted). In other words, "[i]f plainly expressed, the insurers are entitled to have liability limitations construed and enforced as expressed." Miller v. McClure, 326 N.J. Super. 558, 564 (App. Div. 1998), aff'd, 162 N.J. 575 (1999). The Miller court held that the business exclusion of the defendant's homeowner's insurance policy excluded sexual harassment claims based on the defendant's workplace conduct because the claims "arose out of or in connection with a 'business' engaged in by [defendant] . . . ." Id. at 570.

Willard's altercation with Mr. Molla occurred in the course of Willard's employment for the casino; no reasonable jury could conclude otherwise. Willard's homeowner's insurance policy "do[es] not cover . . . **business** pursuits . . . ." [Docket Item 42-15 at 29.] This exclusion is specific, clear, and prominent. Moreover, Plaintiffs have not identified any reason that upholding this exclusion would violate public policy.

The business exclusion in Willard's homeowner's insurance policy applies to the altercation between Mr. Molla and Willard at the casino where Willard undoubtedly acted in his employment capacity. Summary judgment will be granted for Third-Party Defendant High Point and against Third-Party Plaintiff Willard. Plaintiffs' arguments, i.e., that Willard's actions exceeded the scope of his employment and were unnecessary and unauthorized, do not impact whether the homeowner's insurance policy covers this incident. This holding does not extinguish Plaintiffs' claims against Willard.


**V.   CONCLUSION**

Defendant Tropicana Corp.'s motion to dismiss will be granted because it bought the casino free and clear of all claims and interests pursuant to 11 U.S.C. § 363(f). Third-Party Defendant High Point's motion for summary judgment will be granted against Third-Party Plaintiff Willard because Willard's homeowner's insurance policy excludes his employment-related actions. An accompanying Order will be entered.



**May 20, 2014**                          **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge

18